UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ghaith Al Karakushe,

      Plaintiff,

v.                                                                              Civil Case No. 19-cv-11625

Auburn Fields Hotel, Inc., *et al.*,                          Sean F. Cox
                                                                                United States District Court Judge
      Defendants.

_____/

## OPINION AND ORDER DENYING IN PART GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This is an employment discrimination case. Plaintiff, Ghaith Al Karakushe ("Karakushe") sued his former employer, Auburn Fields Hotel, Inc. ("Baymont"), Namou Hotel Group, Inc, and Akram Namou ("Namou") (collectively "Defendants") alleging three counts of racial discrimination and retaliation: one under 42 U.S.C. §1983 (Count I); one count under the Michigan Elliott-Larsen Civil Rights Act (MCL 37.2701(a)) (Count II); one count under Title VII of the Civil Rights Act (42 U.S.C. §2000e-3(a))(Count III). (Am. Compl. ECF No. 15 at 2-10). Karakushe also pleads one count of declaratory judgment asking the Court to declare the Arbitration Agreement included in his personnel file as unlawful under federal and Michigan law (Count IV). (Am. Compl. at 10-11). The matter currently before the Court is Defendants' Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. 56. A zoom hearing was held on January 21, 2021. For the reasons set forth below, the Court DENIES Defendants' motion

regarding the race discrimination claims, and GRANTS Defendants' motion regarding personal liability for Namou under Count III, the retaliation claims, and declaratory judgment.

## BACKGROUND

Karakushe commenced this action in this Court on June 3, 2019. (Compl. ECF No. 1). Karakushe filed an Amended Complaint on August 15, 2019. (Am. Compl. ECF No. 15). As such, that pleading superseded and replaced the original complaint. Discovery closed on August 27, 2020.

On September 21, 2020, Defendants filed this motion for summary judgment arguing that: (1) Karakushe has not established a race discrimination claim under either 42 U.S.C. §1981 or Title VII of the Civil Rights Act, (2) Karakushe has failed to establish retaliation under either federal or state law, and (3) Karakushe's Declaratory Judgment Claim is subject to dismissal. (Def's Br. ECF No. 27 at i-ii).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Defendants' motion includes a "Statement of Material Facts Not In Dispute" ("Def's. "Stmt.") and Plaintiff's response brief includes a "Counter-Statement of Disputed Facts" ("Pl.' s Stmt.").

This matter arises out of the Karakushe's termination from Auburn Fields Hotel, Inc. d/b/a Baymont Inn in Auburn Hills ("Baymont"). (Namou Dep. ECF No. 27-2 at 6). In February 2018, Regional Manager Steve Jarbow ("Jarbow") hired Karakushe as the general manager at Baymont. (Karakushe Dep. ECF No. 27-3 at 7).

Namou owns and operates Baymont, as well as fifty or sixty other hotels in Michigan, Indiana, and Ohio. (Namou Dep. at 3). While Namou did not meet Karakushe when he was hired, Namou was aware that Jarbow had hired someone for the position. (Namou Dep. at 9). Namou visited Baymont at least twice in 2018. (Karakushe Dep. at 10). However, Karakushe was not at the hotel either time. (Karakushe Dep. at 10). The first time Karakushe was running an errand for the hotel, and the second time was on Sunday evening after Karakushe had left for the evening. (Karakushe Dep. at 10).

In April 2018, Karakushe hired Christina Rush ("Rush"), an African American woman, as a front desk agent for Baymont. (Jarbow Dep. ECF No 27-4 at 16). In August 2018, Karakushe promoted Rush to the position of front desk supervisor. (Rush Dep. ECF No. 25-5 at 3). In late November or early December 2018, Namou visited the hotel and met Rush for the first time. (Namou Dep. at 11; Rush Dep. at 5).

Namou testified that due to the "low sales during 2018," he made the decision to fire Karakushe. (Namou Dep. at 14-15). A month or two prior to Karakushe's termination, Namou and Jarbow had a discussion about replacing Karakushe as general manager. (Namou Dep. at 15). Namou testified that they decided to give Karakushe a chance to improve and that he told Jarbow to relay this to Karakushe, but Karakushe testified that he never learned of Namou's dissatisfaction. (Namou Dep. at 15; Karakushe Dep. at 10).  Namou directed Jarbow to terminate Karakushe one to two days prior to the termination. (Namou Dep. at 34). On December 7, 2018, Jarbow terminated Karakushe. (Karakushe Dep. at 12).

Prior to his termination, Karakushe was not made aware that Namou had a problem with his performance. (Namou Dep. at 15; Karakushe Dep. at 10) Jarbow never disciplined Karakushe. (Jarbow Dep. at 75). Defendants have a Discipline Policy, which states that employees should be made aware of concerns and be given help to correct the situation. (Discipline Policy, ECF No. 30-13) Defendants did not follow this Policy with Karakushe's termination. (Jarbow Dep. at 75-76). Rather, Karakushe received bonuses in June, July, and August of 2018 because sales at the hotel were higher than the previous year. (Karakushe Dep. at 9).

After Jarbow terminated him, Karakushe called Namou to discuss why he was fired. (Karakushe Dep. at 12). During the conversation, Namou discussed the finances of the hotel and also said, "what is that you hired a black girl to be a front desk manager. What does that mean?" (Transcript of Phone Call ECF No. 27-7 at 5). Karakushe responded, "front desk supervisor." (Transcript of Phone Call at 5). Karakushe testified to the meaning of the comment as follows:

> Q.     During the conversation Akram Namou made a derogatory comment about the fact that plaintiff hired an African-American front desk

supervisor stating, quote, you hired a black girl to be a front desk manager, what does that mean, question mark.

               You said in here that Akram Namou made a derogatory comment. What's the derogatory comment here?

     A.     Because he – this comment, I realized that Mr. Namou fire me – I believe, Mr. Namou fired me because he came on so I promoted like African-American as front desk manager.

     Q.     Where is the derogatory nature of the comment?

     A.     In his voice, his emotion.

     Q.     So you're interpreting, you're assuming it was derogatory?

     A.     Sir, I am Iraqi, he's Iraqi, we understand the language, even if it's not body language, it is over the phone but I can relate his emotion over the phone.

(Karakushe Dep. at 12). Namou's son took over at Baymont as general manager after Karakushe's termination. (Def's Stmt. at 6).

On February 5, 2019 and April 1, 2019, Karakushe filed two charges of discrimination with the EEOC against Defendants. (Def's Stmt. at 7). Namou hired Karakushe's son, Alex Karakushe, to fill the general manager position at Baymont. (Def's Stmt. at 7).

After Karakushe's termination and his EEOC Charges of Discrimination against Defendants, Rush was promoted to director of guest services at Baymont. (Def's Stmt. at 7). In September 2019, Rush was transferred, at her request, to Hawthorn Suites in Detroit to be closer to home. (Def's Stmt. at 7). Rush was switched from salary to hourly pay and no longer had a supervisory role that she had occupied at Baymont. (Rush Dep. at 11).

**STANDARD OF REVIEW**

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id.* (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

**ANALYSIS**

**I. Has Karakushe Established A Race Discrimination Claim?**

Karakushe alleges three counts of race discrimination: one under 42 U.S.C. §1981 (Count I); one count under the Michigan Elliott-Larsen Civil Rights Act (MCL 37.2701(a)) (Count II); one count under Title VII of the Civil Rights Act (42 U.S.C. §2000e-3(a))(Count III). (Am. Compl. ECF No. 15 at 2-10).

Title VII forbids employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . race." 42 U.S.C. §2000e-2(a). Title VII "forbids discrimination on the basis of association with or advocacy for a protected party." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Title VII also protects "individuals who, though not members of a protected class, are victims of discriminatory animus toward protected third persons with whom the individuals associate." *Id*. at 512. Similarly, 42 U.S.C §1981 "prohibits discrimination based on association with or advocacy for non-whites, and we review §1981 claims under the same standard as Title VII claims." *Id*. To survive a motion for summary judgment in a discrimination case, Karakushe "must present either direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506, 514 (6th Cir. 2003). "The direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet her burden with either method of proof." *Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir. 2000).

The Michigan Elliot-Larsen Civil Rights Act ("ELCRA") prohibits employers from "fail[ing] or refus[ing] to hire or recruit, discharge, or otherwise discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege or employment, because of . . . race . . . ." M.C.L. §37.2202(1)(a). Proof of discriminatory treatment under the ELCRA "may be established by direct or indirect or circumstantial evidence." *Lowe v. Walbro*, LLC, 972 F.3d 827, 832 (6th Cir. 2020) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124 (2003). "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *In re Rodriguez*, 487 F.3d 1001, 1007 (6th

Cir. 2007). Thus, all Karakushe's claims for racial discrimination may be reviewed under the same evidentiary analysis.

Here, Karakushe is not a member of the protected class, but he claims he was discriminated against for promoting an African-American to the position of front desk supervisor. (Am. Compl. at 8-9). Karakushe only argues under the direct evidence framework. (Pl's Br. at 20). Karakushe's argument is simple: "[t]he statement made by Namou to Karakushe on the December 7 phone call is direct evidence of racial prejudice motivating the decision to terminate Karakushe." (Pl's Br. at 10). Defendants argue that the comment was a single "stray remark," which is not direct evidence because inferences must be made to conclude to Karakushe's termination was motivated by racially discriminatory animus. (Def's Reply at 2). Defendants' argument is misplaced, and the cases Defendants cite are not analogous to the facts at hand.[1]

"[D]irect evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor. With direct evidence, the existence of unlawful discrimination is 'patent.'" *Weberg*, 229 F.3d at 524 (quoting *Bartlik v. United States Dep't of Labor,* 73 F.3d 100, 103 n. 5 (6th Cir. 1996)). "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden

---

[1] At the hearing, Defense counsel argued that a recent, unpublished Sixth Circuit opinion followed the facts of this case, despite not being able to name the case at the hearing. He later emailed a copy of *Harris v. Akron*, Case No. 19-4101 (6th Cir. Dec. 15, 2020) to the Court and opposing counsel. This case was not properly presented to the Court, and therefore the Court will not consider it. However, the Court has reviewed the opinion and notes that it is not analogous to the facts at hand. Furthermore, on January 22, 2021, Defense counsel also filed a supplemental brief – without permission from the Court – with another case for supplemental authority, *Thompson v. Fresh Products,* LLC, Case No. 20-3060 (6th Cir. Jan. 15, 2021). (ECF No. 37). However, this case is also not analogous to the facts or law at issue in this case.

of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012).

Looking at Namou's statement in light most favorable to Karakushe and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Karakushe's promotion of Rush was a motivating factor in his decision to terminate Karakushe's employment. See *Ondricko*, 689 F.3d at 650. In late November or early December 2018, Namou visited Baymont and discovered that Rush, an African-American woman, was the front desk supervisor. (Namou Dep. at 11; Rush Dep. at 5). A few days later,[2] Namou told Jarbow, "the revenue's down, you know, I want a fresh voice on it, I want a fresh set of eyes, and you know, I want to just get rid of Mr. Karakushe, and you know, let's work on finding someone else." (Jarbow Dep. at 20). It was Namou's decision to terminate Karakushe, despite Namou's testimony that he has "no involvement in hiring and terminating any of the staff in the hotel," including general managers, which was Karakushe's position. (Namou Dep. at 34; Jarbow Dep. at 19). At Namou's direction, Jarbow terminated Karakushe on December 7, 2018. (Jarbow Dep. at 19). Later that day, Karakushe called Namou to find out why he was fired. (Karkakushe Dep. at 13). During the call, Namou discussed the finances and performance of the hotel, but he also said, "what is that you hired a black girl to be front desk manager. What does that mean?" (Phone Call Transcript at 5). Karakushe responded, "front desk supervisor." (Phone Call Transcript at 5). Namou testified that the purpose of his statement was to identify her to Karakushe but did not specify as to why he

---

[2] Jarbow testified that the conversation was "in late November or early December" and "a day or two" prior to Karakushe's termination. (Jarbow Dep. at 19-20). Rush testified that she met Namou "in late November or early December." (Rush Dep. at 5). Karakushe was terminated on December 7, 2018. (Karakushe Dep. at 17).

9

would bring her up during the discussion of why Karakushe was being terminated. (Namou Dep. at 33). Karakushe testified that he could tell from Namou's "voice, his emotion" that the comment was derogatory. (Karakushe Dep. at 12). Under these circumstances, it is reasonable to conclude from Namou's statement that he was motivated by racial animus when he terminated Karakushe.

Because Karakushe has proffered direct evidence of discrimination, the burden of production and persuasion shift to Defendants to demonstrate that they would have fired Karakushe irrespective of its discriminatory intent. *Ondricko*, 689 F.3d at 650. Namou and Jarbow both testified that they had prior discussions about Baymont's revenue and Karakushe's performance, but there was no record of the conversations. (Jarbow Dep. at 19; Namou Dep. at 15). Jarbow testified that he spoke with Karakushe about Namou's dissatisfaction, but Karakushe testified that Jarbow never discussed Namou's disappointment in him. (Jarbow Dep. at 20; Karakushe Dep. at 10). Jarbow never disciplined Karakushe. (Jarbow Dep. at 75). Defendants have a Discipline Policy, which states that employees should be made aware of concerns and be given help to correct the situation. (Discipline Policy, ECF No. 30-13) Defendants did not follow this Policy with Karakushe's termination. (Jarbow Dep. at 75-76). Rather, Karakushe received bonuses in June, July, and August of 2018 because sales at the hotel were higher than the previous year. (Karakushe Dep. at 9). Viewed in a light most favorable to Karakushe, a jury could reasonably disbelieve Defendants' proffered explanation due to the competing evidence as to Karakushe's job performance.

For the above reasons, the Court finds that there is a genuine issue of material fact as to whether Namou unlawfully discriminated against Karakushe and DENIES Defendants' motion regarding the race discrimination claims.

## II. Personal Liability for Namou

Defendants argue that there is no individual liability under Title VII of the Civil Rights Act because an individual is not an "employer for purposes of the Act, and therefore Karakushe's Title VII claim against Namou should be dismissed." (Def's Br. at 4). *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Plaintiffs do not dispute this but only assert that Namou can be held personally liable for the discrimination claims under §1981 and the ELCRA. (Pl's Br. at 20-22).

As the parties conceded at the hearing, there is no dispute here: Namou can be held personally liable under §1981 and the ELCRA, but he cannot be held personally liable under Title VII. Therefore, the Court GRANTS Defendants' motion as to dismissing the Title VII claim against Namou in his personal capacity.

## III. Retaliation Claim

At the hearing on January 22, 2021, Plaintiffs agreed to dismiss the retaliation claim. Therefore, the Court GRANTS Defendants' motion on summary judgment dismissing the retaliation claim.

## IV. Declaratory Judgement Claim

Karakushe does not oppose Defendants' motion to dismiss the request for declaratory judgment in Count IV of the Amended Complaint that the "Arbitration Agreement" contained in

Karakushe's personnel file is invalid and unenforceable, as Defendants have conceded that this Court has jurisdiction over this matter. (Pl's Br. at 22-23).

Therefore, the Court GRANTS Defendants' motion for summary judgment as to the declaratory judgment claim.

## CONCLUSION

For the reasons explained above, IT IS SO ORDERED that Defendants' motion for summary judgment is DENIED in part and GRANTED in part. The remaining viable claims are: Counts I, II, and III alleging race discrimination against Auburn Fields Hotel, Inc. and Namou Hotel Group; and Counts I and II alleging race discrimination against Akram Namou. Count IV and the retaliation claims in Counts I, II, and III are dismissed.

IT IS SO ORDERED.

s/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated: February 3, 2021

12